IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BILL RUSSELL VALDEZ,

      Plaintiff,                             No. CIV S-09-2583-CMK (TEMP)

    vs.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.                       MEMORANDUM OPINION AND ORDER

_____/

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 18) and defendant's cross-motion for summary judgment (Doc. 23). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

# I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits protectively on January 31, 2007 alleging an onset of disability on October 20, 2002 due to physical and mental impairments. (Certified administrative record ("CAR") 8, 11, 58-61, 93-100, 127, 138, 181.) Specifically, plaintiff claims disability based on impairments due to disc disease, back/neck/shoulder pain, depression, anxiety and agoraphobia. Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on January 23, 2009, before Administrative Law Judge ("ALJ") L. Kalei Fong. In a March 11, 2009 decision, the ALJ concluded that plaintiff is not disabled[2] based on the following findings:

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

1.  The claimant met the insured status requirements of the Social Security Act though December 31, 2005.

2.  The claimant has not engaged in substantial gainful activity since October 20, 2002, the alleged onset date (20 CFR 404.1571 *et seq.*) and 416.971 *et seq.*).

3.  On and before December 31, 2005, the date that the claimant last met the insured status requirements for Title II benefits, the claimant did not have an impairment or combination of impairments that was severe. As of January 31, 2007, the Title XVI application date, the claimant has the following severe impairments: degenerative disc disease of the spine (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).[3]

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work[4] as defined in 20 CFR 416.967(b).

6.  The claimant is unable to perform any past relevant work (20 CFR 416.965).

7.  The claimant was born on November 30, 1958 and was 43 years old, which is defined as a younger individual age 18-49, on the

---

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

   [3] Plaintiff does not challenge this finding. Thus, the only issue presented here is whether plaintiff is entitled to benefits under Title XVI of the Act.

   [4] 20 C.F.R. § 404.1567(b) provides:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

|   |     |     |
|---|-----|-----|
|   |     | alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 416.93). |
|   | 8.  | The claimant has a limited education and is able to communicate in English (20 CFR 416.964). |
|   | 9.  | Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
|   | 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566). |
|   | 11. | The claimant has not been under a disability, as defined in the Social Security Act, from October 20, 2002 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). |

CAR 8-17. After the Appeals Council declined review on July 13, 2009, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

1   Therefore, where the evidence is susceptible to more than one rational interpretation, one of
2   which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.
3   Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal
4   standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th
5   Cir. 1988).

## III.  DISCUSSION

7           Plaintiff argues the ALJ erred in several ways: (1) the ALJ improperly discounted
8   the opinion of a treating physician; (2) the ALJ improperly discredited Plaintiff; (3) the ALJ
9   failed to properly consider third party testimony; and (4) the ALJ failed to consult a vocational
10  expert.

### A.    MEDICAL OPINION OF TREATING PHYSICIAN

12          Plaintiff contends the ALJ improperly accorded no weight to the opinion of
13  treating physician Dr. Christensen.  The weight given to medical opinions depends in part on
14  whether they are proffered by treating, examining, or non-examining professionals.  See Lester v.
15  Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a
16  treating professional, who has a greater opportunity to know and observe the patient as an
17  individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d
18  1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least
19  weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d
20  502, 506 & n.4 (9th Cir. 1990).

21          In addition to considering its source, to evaluate whether the Commissioner
22  properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are
23  in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an
24  uncontradicted opinion of a treating or examining medical professional only for "clear and
25  convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.
26  While a treating professional's opinion generally is accorded superior weight, if it is contradicted

by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Dr. Christensen examined plaintiff twice in October 2008. The medical record does not indicate any other visits to this physician. Upon Dr. Christensen's first examination on October 1, 2008, the following was noted by the doctor: "Inspection of the spine, he has normal contour and coronal and sagittal planes. He can forward flex fingers to the floor, extend 10 degrees. Side to side bend 15 degrees. Extension worsens his pain. Lower extremity strength is 5/5 throughout. Sensation is intact. Patellar reflexes are 2+ bilaterally, achilles reflexes 1+ bilaterally. No deformity or gross muscle atrophy is noted. Negative clonus, negative straight leg raises. Hip range of motion is symmetrical without provocation of symptoms." (CAR 408.) Plaintiff was referred at that time for an epidural steroid injection sequence and for an MRI scan. Although plaintiff saw Dr. James Willis for consultation regarding epidural injections, and the same were recommended by that doctor, plaintiff declined to undergo this procedure. (CAR 414-415.) The MRI revealed (1) multilevel degenerative changes; (2) small disc bulging and

moderate narrowing of foramina; and (3) small disc protrusion, narrowed recesses, mild central canal narrowing, mild narrowing of the neural foramina, and slight narrowing of the neural foramen.  (CAR 409, 410.)  In a followup visit on October 22, 2008, Dr. Christensen noted that plaintiff's physical examination remained unchanged and further recorded the doctor's opinion that most of plaintiff's pain was coming from facet arthritis from the disc degeneration and not from herniations.  (CAR 412.)

In January 2009, Dr. Christensen filled out a check-box lumbar residual functional capacity questionnaire wherein he opined that plaintiff suffered from tenderness, muscle spasm, muscle weakness, sensory change, impaired sleep, swelling, atrophy, and decreased range of motion; that plaintiff experienced depression and anxiety; that plaintiff was incapable of "even 'low stress' jobs;" that plaintiff could only walk one block without rest or severe pain; that plaintiff could only sit and stand for ten minutes at a time ; that plaintiff could sit/stand/walk for a total of less than two hours in an eight-hour work day; that plaintiff, when a break was needed, would need to rest for one to two days before returning to work; that plaintiff could never lift 20 lbs; and that plaintiff would be absent from work four or more days per month as a result of impairments or treatment.  (CAR 463-467.)  The ALJ rejected these extreme limitations as inconsistent with Dr. Christensen's own findings and other findings in the record medical evidence.  (CAR 15.)  The ALJ specifically noted that other than occasional mild limitations in range of motion and minimal muscle tenderness, the objective findings noted by Dr. Christensen in the residual functional capacity questionnaire are not found in the medical record.  On the contrary, the ALJ noted that the findings specifically state there have been no sensory changes, weakness, spasm, or atrophy and that there were no reports of severe memory or cognitive dysfunction that would warrant the mental limitations assessed by Dr. Christensen.  (CAR 15.)  The ALJ thoroughly and accurately summarized the medical records in the written decision.  (CAR 13-14.)  The court finds the ALJ properly rejected the unsupported opinion of Dr. Christensen and that substantial evidence supports the ALJ's decision to accord significant

weight to the opinions of the state agency physicians. (CAR 15 (discussion of state agency and Dr. Christensen's opinions); 207, 224, 225, 328-330, 425, 435, 436, 438, 442, 455, 456 (examinations showing minimal tenderness, normal range of motion, unremarkable x-rays); 195, 281, 344, 345, 351, 355 (normal gait, normal muscular strength, negative straight leg raises bilaterally); 408, 412 (normal findings by Dr. Christensen of normal contour of spine, normal lower extremity strength, range of motion symmetrical without provocation of symptoms); 302-307 (assessment by state agency physician that plaintiff could perform medium work); 379-390 (assessment by state agency psychiatrist of no mental impairment).

### B.  PLAINTIFF'S CREDIBILITY

Plaintiff further contends the ALJ did not set forth proper reasons for finding plaintiff's subjective complaints of disabling pain not credible. The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

8

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Plaintiff argues the ALJ improperly rejected his testimony regarding his subjective complaints of fatigue, an inability to concentrate, inability to focus, and pain. The ALJ did not totally reject plaintiff's testimony regarding his subjective complaints, but discredited such testimony to the extent plaintiff alleged such symptoms precluded any ability to perform work related activities. (CAR 15.) The ALJ first noted plaintiff had received only conservative treatment, which is a proper consideration in the credibility analysis. The ALJ also noted that the objective findings in the medical record (as discussed above) were almost completely normal.

1  The ALJ relied on the opinions of the state agency physicians but took into account plaintiff's
2  subjective complaints, and thus limited plaintiff to light work, rather than the medium residual
3  functional capacity assessed by the state agency physician.  See Stubbs-Danielson v. Astrue, 539
4  F.3d 1169, 1175 (9th Cir. 2008) (opinions of examining and state agency physicians may
5  properly support credibility determination).  The ALJ also factored in the credibility analysis the
6  fact that plaintiff's pain was controlled with Methadone and that plaintiff declined more
7  aggressive treatment such as epidural steroid injections which were recommended by two of
8  plaintiff's treating physicians.  Finally, the ALJ noted the inconsistencies of plaintiff's testimony
9  regarding marijuana usage and his girlfriends conflicting testimony.
10     The court finds the ALJ's credibility determination was supported by the record as
11  a whole.  The ALJ did not rely solely on the lack of objective medical evidence to support his
12  finding, nor can the court find that he misconstrued or ignored supportive relative evidence.
13  While the ALJ's interpretation of Plaintiff's testimony may not be the only reasonable one, it is
14  still a reasonable interpretation and is supported by substantial evidence.  Providing the ALJ's
15  decision with the proper deference, the court finds the ALJ provided clear and convincing
16  reasons supported by substantial evidence.

17  **C.  LAYWITNESS EVIDENCE**

18     Plaintiff further contends the ALJ improperly disregarded the statements of
19  plaintiff's girlfriend regarding plaintiff's limitations.  "[L]ay witness testimony as to a claimant's
20  symptoms or how an impairment affects ability to work is competent evidence, and therefore
21  cannot be disregarded without comment."  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir.
22  1996); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family
23  members in a position to observe a plaintiff's symptoms and daily activities are competent to
24  testify to condition).  "If the ALJ wishes to discount the testimony of the lay witnesses, he must
25  give reasons that are germane to each witness."  Dodrill, 12 F.3d at 919; see also Stout v.
26  Commissioner SSA, 454 F.3d 1050, 1056 ((9th Cir. 2006) (where ALJ fails to properly discuss

competent lay testimony favorable to plaintiff, court cannot consider error to be harmless unless it can confidently conclude no reasonable ALJ, when fully crediting testimony, could have reached different disability determination).

Plaintiff's girlfriend, Lynn Hunolt, testified at the hearing.  (CAR 48-53.)  Ms. Hunolt testified that she had known plaintiff for four years and that his condition had worsened during that time.  She testified plaintiff does not drive, that she does the grocery shopping and that plaintiff suffered memory losses.  According to Ms. Hunolt, plaintiff spends ninety percent of his time in the bed or bedroom.  The ALJ expressly addressed this testimony in the written decision and discredited the girlfriend's testimony for the same reasons the ALJ found plaintiff to be only partially credible.  (CAR 15.)  The girlfriend's statements are consistent with the testimony of plaintiff, but as discussed above, plaintiff's testimony, to the extent it was inconsistent with an ability to perform any work, was properly discredited.  See Valentine v. Astrue, 574 F.3d 685,694 (9th Cir. 2009) (where clear and convincing reasons given for rejecting subjective complaints of plaintiff and third party testimony mirrors plaintiff's, germane reasons given for rejecting third party evidence).  There was no error in the ALJ's conclusion that this laywitness testimony does not support plaintiff's allegations of disability.

**D. GRIDS**

Finally, plaintiff contends the ALJ improperly relied on the grids and should have obtained the testimony of a vocational expert.  The Medical-Vocational The Medical-Vocational Guidelines ("the grids") are in table form.  The tables present various combinations of factors the ALJ must consider in determining whether other work is available.  See generally Desrosiers, 846 F.2d at 577-78 (Pregerson, J., concurring). The factors include residual functional capacity, age, education, and work experience.  For each combination, the grids direct a finding of either "disabled" or "not disabled."

There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns:  "[T]he ALJ may apply [the grids] in lieu of taking the

testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983). The ALJ may rely on the grids, however, even when a claimant has combined exertional and nonexertional limitations, if nonexertional limitations are not so significant as to impact the claimant's exertional capabilities.[5] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983) (requiring significant limitation on exertional capabilities in order to depart from the grids).

In assigning error to the ALJ's failure to consult a vocational expert, plaintiff relies on the nonexertional limitations assessed by Dr. Christensen. As discussed above, the ALJ properly accorded little weight to Dr. Christensen's opinions regarding plaintiff's functional limitations. Substantial evidence supports the ALJ's finding that plaintiff can perform the full range of light work and has no nonexertional limitations. (CAR 195, 281, 302-307, 351-352, 379-390, 407-410.) The ALJ properly applied grid rules 202.18 and 202.11 in finding plaintiff is not disabled.

### IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

---

[5] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).
Non-exertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c) (2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

1.  Plaintiff's motion for summary judgment (Doc. 18) is denied;

2.  Defendant's cross-motion for summary judgment (Doc. 23) is granted; and

3.  The Clerk of the Court is directed to enter judgment and close this file.

DATED: February 4, 2011

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

JMM
valdez.ss